# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | )<br>)<br>) Case No. 1:14CR00014-003<br>) |
| v. | ) **OPINION AND ORDER**<br>) |
| **SONYA K. STUMBO,** | ) By: James P. Jones<br>) United States District Judge |
| Defendant. | ) |

*Randy Ramseyer, Assistant United States Attorney, Abingdon, Virginia, for United States; Ned Pillersdorf, Pillersdorf, Derossett & Lane, Prestonsburg, Kentucky, for Defendant.*

In this criminal case, the defendant, convicted by a jury of participating in a cockfighting venture, has filed a motion seeking a new trial pursuant to Federal Rule of Criminal Procedure 33, contending that it was error for the court to exclude her testimony that she did not know that cockfighting was against the law. In addition, it is asserted that because the prosecutor made disparaging comments about defense counsel during closing arguments, a new trial is warranted.

For the reasons set forth herein, the defendant's motion will be denied.

I.

The defendant, Sonya K. Stumbo, was charged along with her husband and son and two others with engaging in a conspiracy to (1) sponsor or exhibit an animal in an animal fighting venture in violation of 7 U.S.C. § 2156(a); and (2)

conduct an illegal gambling business in violation of 18 U.S.C. § 1955(a) (Count One). In addition, she was charged with committing specific substantive offenses relating to cockfighting through her participation in the conspiracy. *See Pinkerton v. United States*, 328 U.S. 640, 646 (1946).[1] Those other offenses were knowingly transporting in interstate commerce a knife or other sharp instrument, attached or designed or intended to be attached to the leg of a bird for use in an animal fighting venture, in violation of 7 U.S.C. § 2156(e) (Counts Four through Eight), and knowingly transporting in interstate commerce an animal for the purposes of having the animal participate in an animal fighting venture, in violation of 7 U.S.C. § 2156(b) (Counts Ten through Fourteen).

The charges arose out of a cockfighting venture located in Floyd County, Kentucky, at a place called the Big Blue Sportsmen's Club, a cockfighting pit or arena. The coconspirators included persons who transported knives (called "gaffs") and the fighting cocks themselves across the state line from this judicial district into Kentucky. Mrs. Stumbo's husband and son, as well as the other

---

[1] "The *Pinkerton* doctrine provides that a defendant is liable for substantive offenses committed by a co-conspirator when their commission is reasonably foreseeable and in furtherance of the conspiracy. The idea behind the *Pinkerton* doctrine is that the conspirators are each other's agents; and a principal is bound by the acts of his agents within the scope of the agency." *United States v. Blackman*, 746 F.3d 137, 141 (4th Cir. 2014) (internal quotation marks and citations omitted).

charged coconspirators pleaded guilty but Mrs. Stumbo went to trial, where, following three days of testimony, the jury convicted her of all charges.

Mrs. Stumbo's husband, Walter Dale Stumbo, managed the cockfighting operation, with the assistance of her son, Joshua Dale Stumbo. Cockfights were held Friday and Saturday nights, with large amounts of money awarded to winning owners, as well as side betting by spectators. The government showed that Mrs. Stumbo managed the restaurant located on the premises, issued identification cards for attendees, sold premium seat tickets to spectators, and distributed cockfighting supplies. She also took photographs of winning owners and handlers for display in the arena and paid off winners who used the gambling machines located there.

Mrs. Stumbo testified in her own behalf, and while she admitted her participation in the operation of the cockfighting venture, minimized her involvement, claiming that she did not like cockfighting and had participated only because her husband had asked her to do so, and that she had been simply "following orders."

During the government's cross examination of Mrs. Stumbo, the following occurred:

> Q    Did you know she [a cockfighting participant] was from Virginia?
>
> A    I knew they were from somewhere in Virginia.

Q  Okay. And you knew they were coming there to fight cocks, right?

A  Yes, but I didn't know it was against the law.

MR. RAMSEYER: Objection, Your Honor. That's not relevant.

THE COURT: Ladies and gentlemen, please disregard the statement of the witness.

(Trial Tr. 2, Aug. 6, 2014, ECF No. 106.)

During the government's final rebuttal argument, the following occurred:

MR. RAMSEYER: You've all read the paper at times about some jury verdict, you heard about the evidence, and then the jury did something crazy. You're the jury now. Don't be a jury that does something crazy. You've heard the evidence. It's overwhelming. Do the right thing. Mr. Pillersdorf is the defense attorney for Mrs. Stumbo. He has a job. His job is to make the best case possible for his client. And so what he's argued is everything the Government says is true; it's just not a crime. That's his argument. That's all he can make because he can't beat the Government on its facts.

It's not true. It is a crime. It's absolutely a crime. What he's trying to do is confuse you. He's trying to make you think she's been charged with sponsoring an animal in an animal fighting venture. She hasn't been charged with that, and he knows it. She's been charged with conspiring to sponsor animals in an animal fighting venture. What that means is she's in with other people to have a place where animals are exhibited for fighting, and he knows she's guilty of that.

MR. PILLERSDORF: I don't think that's fair argument, Your Honor.

THE COURT: Ladies and gentlemen, what the attorney knows or not is not an issue in this case. Please disregard that statement.

(*Id.* at 5.)

Later, following argument and out of the presence of the jury, defense counsel moved for a mistrial, as follows:

> THE COURT: Let me ask counsel if there are any other objections to the court's charge other than previously have been made. You don't need to repeat any, but any additional?
>
> MR. RAMSEYER: From the Government, no objections, Your Honor.
>
> MR. PILLERSDORF: No objection, but I do have a motion to make.
>
> THE COURT: All right.
>
> MR. PILLERSDORF: We would move for mistrial. I think the comment made that I, myself, as a defense attorney knew my client was guilty, I think that's an interesting violation of a rule that you can't vouch for a witness, but I think it's a Sixth Amendment violation, that you can't attack the role of defense counsel, and we'd ask for mistrial.
>
> THE COURT: I will deny the motion.

(*Id.* at 6.)

In her Motion for New Trial, the defendant contends that she is entitled to a new trial because the court should have allowed her to testify that she thought cockfighting was legal. She argues that her lack of knowledge of this illegality "was pivotal in this case." (Mem. in Supp. 2, ECF No. 102-1.) In addition, she argues that the court erred in not granting her motion for a mistrial based upon the prosecutor's statement to the jury that defense counsel "knows she's guilty." This

-5-

Case 1:14-cr-00014-JPJ-PMS   Document 109   Filed 09/11/14   Page 5 of 12   Pageid#: 1090

statement by the prosecutor, it is contended, violated her due process right to a fair trial.

The Motion for New Trial has been briefed and is ripe for decision.[2]

## II.

Turning to the first ground for a new trial, I find it unavailing. Of course, "The general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system." *Cheek v. United States*, 498 U.S. 192, 199 (1991). Conviction of conspiracy under 18 U.S.C. § 371 does not require the government to prove that the defendant knew that her conduct would violate the law, unless the underlying crime included such specific intent. *See United States v. Feola,* 420 U.S. 671, 686 (1975); *United States v. Deffenbaugh*, 709 F.3d 266, 272 (4th Cir. 2013). The cockfighting offenses charged in this case do not require such intent, but only that the conduct at issue be performed "knowingly." 7 U.S.C. § 2156(a)(1), (b), (e). Unless Congress has otherwise clearly specified, "mens rea requires not that a defendant know that his conduct was illegal, but only that he 'know the *facts* that make his conduct illegal.'" *United States v.* Wilson, 133 F.3d 251, 262 (4th Cir. 1997) (quoting *Staples v. United States,* 511 U.S. 600, 605 (1994)).

---

[2] I will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not significantly aid the decisional process.

In accord with these legal principles, the court properly instructed the jury that it must find that the defendant knew the unlawful purpose of the agreement and joined it with the intent to further that purpose. (Jury Instruction No. 14, ECF No. 94.) The jury was not instructed that she must have known that the purpose of the conspiracy was illegal. Whether Mrs. Stumbo believed that cockfighting was legal or not was irrelevant to the issues in the case and her spontaneous statement to the jury in that regard was properly struck by the court.[3]

### III.

"[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone." *United States v. Young*, 470 U.S. 1, 11 (1985). To address prosecutorial misconduct, including improper comments during closing argument, the Fourth Circuit has provided the standard to be applied in considering the effect of a prosecutor's alleged misconduct and the existence of reversible error. The standard has been described in various ways, but has been summarized as follows:

> Improper remarks during the government's closing arguments violate a defendant's due-process rights so as to warrant reversal only if the remarks so prejudiced the defendant's substantial rights that the defendant was denied a fair trial. Therefore, to obtain a new trial, [the defendant] must demonstrate both that a statement was improper and

---

[3] In fact, there was ample evidence that the operators knew that cockfighting was illegal, since they took considerable pains to keep out unwanted visitors, including providing photo ID cards for entry, which cards were disguised as "parking permits," and were issued by Mrs. Stumbo.

-7-

that it caused prejudice. Four factors are relevant to [the court's] evaluation of prejudice: (1) the degree to which the comments could have misled the jury; (2) whether the comments were isolated or extensive; (3) the strength of proof of guilt absent the inappropriate comments; and (4) whether the comments were deliberately made to divert the jury's attention.

*United States v. Poulin*, 461 F. App'x 272, 283 (4th Cir.) (unpublished) (internal quotation marks and citations omitted), *cert. denied*, 132 S. Ct. 2448 (2012). The Fourth Circuit has also considered two additional factors regarding the issue of prejudice in other cases: "[W]hether the prosecutor's remarks were invited by improper conduct of defense counsel; and . . . whether curative instructions were given to the jury." *United States v. Brown*, 70 F. App'x 99, 102 (4th Cir. 2003) (unpublished) (internal quotation marks and citation omitted).

Under the Fourth Circuit's standard, the first step is to determine whether the prosecutor's statement was improper. By asserting defense counsel's knowledge of guilt, the prosecutor acted improperly here. *See* Gregory G. Sarno, Annotation, *Propriety and Prejudicial Effect of Prosecutor's Argument Giving Jury Impression that Defense Counsel Believes Accused Guilty*, 89 A.L.R.3d 263 (1979) ("The courts have generally, although not uniformly, taken the stance that it is improper for a prosecutor to speculate, in argument to the jury at a criminal trial, as to defense counsel's supposed belief in the guilt or innocence of the defendant." (footnotes omitted)). At least three courts of appeal have considered statements

Case 1:14-cr-00014-JPJ-PMS   Document 109   Filed 09/11/14   Page 8 of 12   Pageid#: 1093

regarding counsel's knowledge of guilt and described them as improper. *See United States v. Tutino*, 883 F.2d 1125, 1135-36 (2d Cir. 1989); *United States v. Manriquez Arbizo*, 833 F.2d 244, 247-48 (10th Cir. 1987); *Homan v. United States*, 279 F.2d 767, 775 (8th Cir. 1960); *cf. Hicks v. Collins*, 384 F.3d 204, 222-23 (6th Cir. 2004) (referencing the general impropriety of the prosecution to imply that defense counsel believes defendant is guilty). Similarly, courts of appeal have also found it improper for prosecutors to claim that defense counsel suborned perjury or to attack the honesty or sincerity of counsel. *See United States v. O'Banion*, 943 F.2d 1422, 1430-31 (5th Cir. 1991); *United States v. Sblendorio*, 830 F.2d 1382, 1395 (7th Cir. 1987).

The Fourth Circuit has considered challenges based on analogous statements directed at defense counsel's honesty and knowledge that defendant was a liar and found those statements improper. *See Brown*, 70 F. App'x at 104 (considering prosecutor statement regarding dishonesty of defense counsel's cross-examination); *United States v. Weatherless*, 734 F.2d 179, 181 (4th Cir. 1984) (considering statement that defense counsel knew defendant was a liar). *But see Poulin*, 461 F. App'x at 284 (concluding that prosecutor's statement that defense counsel presented "red herring" arguments was not improper because the role of defense counsel was not attacked).

Assuming that the prosecutor's statement was improper, the defendant must also establish prejudice based on the relevant factors. The first prejudice factor is closely related to the last factor in this particular instance, because the tendency of the prosecutor's statement to mislead the jury was likely cured by defense counsel's immediate objection and the court's instruction to the jury to disregard the prosecutor's statement.[4] In numerous cases, the Fourth Circuit has highlighted the significance of curative statements or jury instructions by the court to preserve a fair trial following improper statements by the prosecution. *See United States v. Collins*, 415 F.3d 304, 309 (4th Cir. 2005); *United States v. Harrison*, 716 F.2d 1050, 1053 (4th Cir. 1983); *United States v. Susi*, 378 F. App'x 277, 283 (4th Cir. 2010) (unpublished); *United States v. Davis*, 270 F. App'x 236, 246-47 (4th Cir. 2008) (unpublished); *Brown*, 70 F. App'x at 104. Regarding the second prejudice factor, the prosecutor's improper comment was isolated, having occurred only once during the prosecutor's rebuttal statement.

Regarding the remaining prejudice factors identified by the Fourth Circuit, I find that evidence of the defendant's guilt was overwhelming in this case. She was deeply involved in the operation of the cockfighting venture and the jury had ample evidence to conclude that she had joined the conspiracy and was liable for

---

[4] In addition, following closing arguments, in the court's final charge to the jury, the standard instruction was given that "when I told you not to consider a particular statement, you were told to put that statement out of your mind, and you may not refer to that statement in your deliberations." (Jury Instruction No. 1, ECF No. 94.)

her coconspirators' conduct in furtherance of that conspiracy. In addition, the prosecutor's statement at issue, while regretful, was clearly prompted by defense counsel's mischaracterizations of the applicable standard of guilt during argument. He argued that because Mrs. Stumbo had never transported a fighting cock or otherwise actually participated in cockfighting, she was innocent of the charges; but under the court's instructions, based upon the *Pinkerton* doctrine, she could in fact be found guilty based solely upon her coconspirators' conduct.[5]

For these reasons, I find that the prosecutor's statement was not prejudicial and the court's refusal to declare a mistrial was not error.

Regardless of my holding in this case, the moral is that lawyers should simply refrain from personal references to opposing counsel. It's particularly unfair for prosecutors to attack defense counsel in this way. Sometimes defendants have only a lame defense, but insist on going to trial in spite of advice to the contrary; prosecutors, on the other hand, have the discretion to decline to prosecute

---

[5] Moreover, the jury expressly found that another purpose of the conspiracy was to conduct an illegal gambling business in violation of 18 U.S.C. § 1955(a). (Verdict, ECF No. 97.) "[A]ny degree of participation in an illegal gambling business" falls under this statute, "except participation as a mere bettor." *Sanabria v. United States*, 437 U.S. 54, 70 n.26 (1978), s*ee also United States v. Merrell*, 701 F.2d 53, 55 (6th Cir. 1983) (upholding conviction of a waiter/janitor who served coffee, cleaned ash trays, and stacked chairs at a gambling joint). Even applying a more restrictive view of the necessary participation, as some circuits do, Mrs. Stumbo's activities certainly placed her within the scope of the statute. *See United States v. Boss*, 671 F.2d 396, 400 & n.5 (10th Cir. 1982) (finding that mere waitresses were not covered by statute, but noting that waitresses who had additional duties, such as making change for bettors or assisting in the security of the gambling club, could be counted as participants because they performed a necessary function of the operation).

in a weak case, or otherwise offer a sweetheart plea bargain to avoid a trial. Lawyers on both sides should remove from their arsenals any comments on the motivations or characteristics of their adversaries.

IV.

For the foregoing reasons, it is **ORDERED** that the Motion for New Trial (ECF No. 102) is DENIED.

ENTER: September 11, 2014

/s/  James P. Jones
United States District Judge